## MORALES ET AL v. LOPEZ ET AL.

CASACIÓN procedente de la Corte de Distrito de San Juan.

No. 23.—Resuelto en Enero 20, 1903.

CAPACIDAD DE LOS ALBACEAS.—Al otorgar el albacea una escritura de venta que disponga expresamente, que quedando en poder del comprador parte determinada del precio, debe pagarla éste directamente á los herederos, cesa la capacidad del albacea en cuanto á los bienes objeto de la escritura de venta, sin que pueda recibir legalmente el dinero restante de la venta.

PRUEBA.—Se deja á la libre apreciación de los Jueces y Tribunales de Justicia el valor probatorio de las declaraciones de los testigos, sin más limitación que las reglas de la sana crítica.

ESCRITURAS-ESTIPULACIONES.—Cuando en una escritura de compra-venta se estipula que la parte aplazada del precio se pagará, cumplida que sea la condición establecida, no habrá lugar á una demanda para reclamar dicho precio aplazado mientras no se cumpla la expresada condición.

En este caso, un albacea, debidamente autorizado, vendió una casa perteneciente al testador, quedando siete mil pesos en poder del comprador para responder de un entredicho que gravaba la misma, y cancelado éste, los herederos reclamaron aquella suma al comprador, que alegó la había pagado al albacea: en apelación se alegó que el albacea tenía capacidad para recibir el dinero y que el pago se había hecho de buena fé. *Se resolvió:*

(*a*) CAPACIDAD DE LOS ALBACEAS.—Que aunque la capacidad de los albaceas dependía de las facultades que quisieran conferirles los testadores, esto no obstante, la del nombrado en este caso quedó terminada, por lo que respecta á la venta de la casa, desde que otorgó la escritura, dejando definitivamente establecida en ella la aplicación que debía darse á los siete mil pesos restantes del precio de la venta.

(*b*) PAGO DE LAS OBLIGACIONES.—Que el pago debió haberse hecho á los herederos del testador como únicos acreedores á cuyo favor aparecía constituida la obligación;

(*c*) ID.—Que con la reserva establecida en la escritura á favor de los herederos, cesó la capacidad del albacea para realizar el cobro de aquella parte del precio;

(*d*) ID.—Que el deudor no pudo haber hecho el pago de buena fé, pues no podía ignorar el compromiso que había contraido de pagar el dinero, con los intereses, á dichos herederos;

(*e*) ID.—Que tal pago no releva por consiguiente al deudor, ni á su sucesión, de la obligación que tenía contraida para con los expresados herederos.

## EXPOSICIÓN DEL CASO.

*Resultando:* que en 14 de Noviembre de 1876 Doña Car-

Messrs. Associate Justices Hernandez, Figueras, Sulzbacher and MacLeary, concurring.

## MORALES ET AL. *v.* LOPEZ ET AL.

APPEAL in cassation from the District Court of San Juan.

No. 23.—Decided January 20, 1903.

EVIDENCE.—Judges and Courts are left free to weigh the force of the declarations of witnesses with no limitation other than the rules of sound judgment.

DEEDS.—STIPULATIONS.—Where a deed of conveyance contains a stipulation that the balance of the purchase price will be paid upon a specified condition, action will not lie to recover such balance until the condition has been fulfilled.

In this case an executor duly authorized sold a house belonging to the testator, leaving seven thousand dollars with the vendee to abide the outcome of an injunction by which it was encumbered. Said injunction having been dissolved, the heirs claimed the above sum from the vendee who alleged that it had been paid to the executor. On appeal it was alleged that the executor had capacity to receive the money and that the payment had been made in good faith. Held:

(*a*)  That although the capacity of executors depended on the powers which testators saw fit to invest them with, yet, that of the one appointed in this case came to an end with respect to the sale of the house from the moment the deed was executed wherein the application to be given to the seven thousand dollars, balance of the purchase price, was finally determined.

(*b*)  That the payment should have been made to the heirs of the testator, as the only creditors in whose favor the obligation appeared to have been constituted.

(*c*)  That by virtue of the reservation in favor of the heirs made in the deed, the capacity of the executor to effect the collection of that part of the price had ceased.

(*d*)  That the debtor could not have made the payment in good faith, since he must have been aware of his engagement to pay the money with the interest to said heirs.

men Grau y Herrero, de 56 años de edad, de estado viuda, propietaria y vecina de esta Capital, otorgó testamento nuncupativo ante el Notario de la misma, Don Juan Ramón de Torres, por el que, entre otros particulares, declaró, en la cláusula quinta, por sus bienes, la parte que le correspondía en una casa de altos y bajos, de piedra y azotea, radicada en esta Ciudad, calle de la Cruz, frente á la Plaza de Armas; por la novena, que dicha casa, que era de la exclusiva propiedad de la testadora y de su hermana Doña Estéfana Grau, la tenían ofrecida en venta á Don Bernabé Chavarry y habían conferido poder para hacer la escritura al Sr. D. Francisco de Paula Acuña; pero como había que allanar ciertos obstáculos para otorgar dicha escritura, era su voluntad que si la exponente falleciera antes de verificarse su otorgamiento, se llevase á efecto por sus albaceas, repartiéndose sus herederos y legatarios el importe de la venta, la cual estaba ajustada y convenida por la testadora y su hermana Doña Estéfana, en veinte y seis mil pesos al contado; por la décima nombró por sus albaceas testamentarios á Don José Pablo Morales, Don Ricardo Mendizabal y Don José Carambot, confiriendo á todos el poder y facultades necesarios para que de mancomún, ó cada uno de por sí, cumplieran sus disposiciones, prorrogándoles el año legal por todo el más tiempo que necesitaran, y facultándolos asimismo para que organizaran su testamentaría extrajudicialmente y con abstracción de toda autoridad judicial; y por la oncena instituyó en el remanente que quedase de todos sus bienes, acciones y derechos, por sus únicos y universales herederos, á Doña Mercedes Morales, Don José Carambot y sus hijos Juan y Santiago, en esta forma: Doña Mercedes en la mitad del caudal líquido, y en la otra mitad Carambot y sus hijos, por partes iguales.

*Resultando:* que posteriormente, ó sea por escritura pública otorgada en esta Capital ante el Notario Don Demetrio Gimenez y Moreno, en veinte y dos de Enero de mil ochocientos setenta y siete, el Licenciado Don Francisco de Pau-

(e) That the said payment, therefore, does not relieve the debtor or his estate, from the obligation contracted by him with regard to aforesaid heirs.

### STATEMENT OF THE CASE.

On November 14, 1876, Carmen Grau y Herrero, a widow, fifty-six years of age, property-holder and resident of this Capital, executed a nuncupative will before Notary Juan Ramón de Torres, of said city, whereby among other particulars she declared in the fifth clause thereof that she was part-owner of a two story flat-roof stone house, situated on Cruz Street in this city, opposite the main square; under the ninth clause thereof, said house whereof she, the testatrix and her sister Estéfana Grau were the sole owners, had been offered for sale to Bernabé Chavarry, and power of attorney had been conferred by them upon Francisco de Paula Acuña to draw up the deed, but as there were certain obstacles to be surmounted in order to execute said deed it was her will that in case she should die before the execution thereof, the same should be carried out by her testamentary executors; the proceeds of the sale to be distributed among her heirs and legatees; the price fixed and agreed by the testatrix and her sister, being twenty-six thousand *pesos*. Under the tenth clause she named José Pablo Morales, Ricardo Mendizabal and José Carambot, as testamentary executors, conferring upon them all the necessary powers jointly and severally to carry out her last will and testament, making such extension, beyond the period of one year provided therefor by law, as might be required, and further empowering them to settle her estate extrajudicially and without the intervention of any judicial authority. Under the eleventh clause she constituted as sole and universal heirs to her residuary estate, actions and rights, Mercedes Morales, José Carambot and his children, Juan and Santiago, as follows: Mercedes one-half the liquidated estate, and Carambot and his children the other half, in equal shares. Subsequently by public deed executed in this City under date of January 22, 1877,

la Acuña, en su calidad de apoderado especial de la viuda Doña Estéfana Grau, y don José Pablo Morales, como albacea testamentario de Doña Carmen Grau y Herrero, que había fallecido en esta Ciudad el primer día del mismo mes de Enero, en cumplimiento, el primero, de las instrucciones recibidas de su poderdante y el segundo de lo ordenado por la testadora en la cláusula novena de su testamento, otorgaron á favor de Don Bernabé Chavarry, comerciante de esta plaza, la escritura de venta real y absoluta de la citada casa número 15 de la calle de la Cruz de esta Capital, frente á la Plaza de Armas, en precio y cantidad de veinte y seis mil pesos fuertes, moneda corriente en aquella fecha, pagaderos en esta forma: dos mil setenta y cinco pesos de capellanías á censo y tributo que pesaban sobre la casa vendida y se hacía cargo el comprador de reconocer y pagar, lo mismo que los intereses que se devengaran en lo sucesivo, por estar liquidados los anteriores; siete mil ciento cincuenta y dos pesos cincuenta centavos á que ascendía, por capital é intereses liquidados hasta aquella fecha, un crédito hipotecario que pesaba sobre la misma casa á favor de Doña Isabel Cebollero, que también se comprometía á pagar el comprador; nueve mil setecientos setenta y dos pesos cincuenta centavos que los vendedores confesaron haber recibido el mismo día de la venta, y los siete mil pesos restantes que quedaban en poder del comprador, asegurados con hipotecas sobre la misma casa, para responder á las resultas de un entredicho de enagenación que también pesaba sobre la finca vendida, comprometiéndose el comprador á satisfacerlos á los herederos y sucesores de Doña Carmen Grau con un mes de aviso anticipado, tan luego quedara levantado el expresado entredicho, "justificado por medio de su cancelación en el Registro", y pasándoles, mientras tanto, el interés del seis por ciento anual por mensualidades vencidas hasta la entrega del capital adeudado, con lo que estuvo conforme, y se comprometió á cumplir el comprador Don Bernabé Chavarry, lo mismo que el albacea Don José Pablo Morales, obligándose

before Notary Demetrio Jimenez y Moreno, Francisco de Paula Acuña, acting as special attorney for the widow Estéfana Grau and José Pablo Morales, as testamentary executor of Carmen Grau, deceased, the former in compliance with the instructions received from his principal, and the latter in compliance with the direction of the testatrix contained in the ninth clause of her will, executed a deed of sale of aforesaid house No. 15 Cruz Street, opposite the main square in this city, in favor of Bernabé Chavarry, a merchant of said City, for the sum of twenty-six thousand *pesos fuertes*, which was the currency in circulation on that date, payable as follows : the vendee agreed to pay two thousand and seventy-five *pesos* for a mortgage annuity (censo) wherewith the house was encumbered, together with the interest thenceforth accruing thereon, as the previous instalments thereof had been settled ; the vendee also agreed to pay seven thousand one hundred and fifty-two *pesos* and fifty *centavos*, being the liquidated principal of a mortgage debt against said house and interest accrued up to that date in favor of Isabel Cebollero ; the vendee also agreed to pay to the heirs and successors of Carmen Grau nine thousand seven hundred and seventy-two *pesos* and fifty *centavos*, acknowledged by the vendors as having been received on the day of the sale, and the vendee agreed to pay, on one month's notice, after said injunction prohibiting alienation, which encumbered said house, had been dissolved and the proper cancellation thereof entered in the Registry, the seven thousand *pesos* which remained in the hands of the vendee secured by mortgage on said house ; meanwhile interest at the rate of six per cent per annum was to be paid them monthly pending payment of the principal, which arrangement was agreed to by both the vendee, Chavarry, and the executor, Morales, the latter agreeing to endeavor to secure the dissolution of the injunction.

On October 6, 1900, Herminio Díaz Navarro, counsel for Manuel Ruiz Ortiz, as husband of Mercedes Morales, both

éste, además, por su parte, á seguir practicando las diligencias conducentes hasta obtener el alzamiento del expresado entredicho.

*Resultando:* que en seis de Octubre de mil novecientos el Abogado Don Herminio Díaz Navarro, á nombre de Don Manuel Ruiz Ortíz, como esposo de Doña Mercedes Morales, ambos mayores de edad, y de Don José Carambot y sus hijos, Don Juan y Don Santiago del propio apellido, interpuso, ante el Tribunal de Distrito de San Juan, la demanda orígen de este pleito contra Doña Tomasa López Dominguez y sus hijos Don Romualdo, Doña Josefa, Don Bernabé y Don José Chavarry y López, la primera por su propio derecho y los demás en su concepto de herederos de su difunto padre Don Bernabé, en la que invocando los antecedentes expuestos y alegando además que no obstante haber cancelado el entredicho de enagenación que pesaba sobre la casa de la calle de la Cruz, desde el veinte y tres de Febrero del año mil ochocientos ochenta y uno, por mandamiento del Juez de Primera Instancia del Distrito de la Catedral de esta Ciudad, en cumplimiento de la sentencia pronunciada por la Audiencia Territorial de esta Isla, en dos de Setiembre del año anterior, no habían conseguido sus personados, de Don Bernabé Chavarry, no obstante la multitud de reclamaciones privadas que le habían dirigido, que les pagara, no ya los siete mil pesos del precio aplazado de la venta, pero que ni siquiera los intereses convenidos en la escritura: que el Sr. Chavarry había fallecido bajo testamento que otorgara el diez y ocho de Julio de mil ochocientos ochenta y siete, ante el Notario de Madrid, Sr. Gonzalo de las Casas, en el que declaró hallarse casado con Doña Tomasa López Dominguez y que con ella había tenido siete hijos, llamados María, Rosa, Polonia, Romualdo, Josefa, Bernabé y José Chavarry y López, á los que instituyó por sus únicos y universales herederos: que practicados el inventario y la división y adjudicación del caudal relicto, fué adjudicada la casa de la calle de la Cruz, la mitad á la viuda y la otra mitad á los referidos

being of age, and for José Carambot and his sons Juan and
Santiago of the same surname, instituted in the District
Court of San Juan, the suit of which this case is the out-
come, against Tomasa Lopez Dominguez and her children
Romualdo, Josefa, Bernabé and José Chavarry y Lopez the
former in her own right and the others as heirs of their
deceased father Bernabé. The complaint after rehearsing
the matters hereinbefore set forth, further alleged that
notwithstanding the fact that the injunction prohibiting
alienation against the Cruz Street house, since February 23,
1881, had been dissolved by an order of the Judge of First
Instance of the Cathedral District of this City, pursuant to
judgment rendered by the "Audiencia Territorial" of this
Island, on September 2nd of the previous year, and despite
their repeated demands, they had not succeeded in obtain-
ing from Bernabé Chavarry either the seven thousand *pesos*,
still due on the house or even the interest stipulated in the
deed; that Chavarry had died and left a will executed on
July 18, 1887, before Gonzalo de las Casas, a Notary of
Madrid, wherein he declared that he was married to To-
masa López Dominguez, with whom he had had seven
children called respectively, María, Rosa, Polonia, Ro-
mualdo, Josefa, Bernabé and José Chavarry y Lopez, who
were appointed by him as his sole and universal heirs; that
an inventory of the state having been taken and a division
made thereof, one half of the Cruz Street house was allotted
to the widow and the other half to the aforesaid children,
the respective awards being recorded in the Registry of
Property of this City; that subsequently the heirs María,
Polonia and Rosa sold their respective shares to their
mother, for which reason the house now appears as the sole
property of Tomasa Lopez Dominguez and her children Ro-
mualdo, Josefa, Bernabé and José Chavarry y Lopez; and
invoking in their favor Articles 659, 661, 1089, 1091, 1101,
1108, 1109, 1114 and 1257, of the old Civil Code, which
determine the force and efficacy of contracts and the obliga-

hijos, inscribiéndose sus adjudicaciones respectivas en el Registro de la Propiedad de esta Capital: que posteriormente las herederas Doña María, Doña Polonia y Doña Rosa vendieron sus respectivas participaciones en la casa á su señora madre Doña Tomasa, por cuyo motivo · aparece hoy la casa en cuestión como de la exclusiva propiedad de la viuda Doña Tomasa López Dominguez y de sus hijos Don Romualdo, Doña Josefa, Don Bernabé y Don José Chavarry y López; é invocando á su favor los artículos 659, 661, 1089, 1091, 1101, 1108, 1109, 1114 y 1257 del antiguo Código Civil, que consagran la fuerza y eficacia de los contratos y la obligación en que están los herederos de pagar las deudas y cumplir las demás obligaciones de sus causantes, concluyó pidiendo se condenara á Doña Tomasa López Dominguez, por su propio derecho, y á sus hijos Don Romualdo, Doña Josefa, Don Bernabé y Don José Chavarry y López á que sin demora alguna pagaran á los demandantes la cantidad de siete mil pesos con los intereses estipulados desde el veinte y tres de Febrero de mil ochocientos ochenta y uno, y los correspondientes á los intereses vencidos, á contar desde la fecha de la interposición de la demanda, con las costas.

*Resultando:* que conferido traslado de la demanda á los demandados Doña Tomasa Lopez Dominguez y sus hijos Don Romualdo, Doña Josefa, Don Bernabé y Don José Chavarry y Lopez lo evacuaron por conducto del Abogado Don Eduardo Acuña Aybar, impugnando la demanda, y alegando como fundamentos de su negativa, que habiendo acordado la Audiencia Territorial de esta Isla, en sentencia dictada en 2 de Septiembre de 1880, en el juicio civil ordinario seguido por el Albacea Don José Pablo Morales, contra la sucesión de Don José Saturnino Nuñez, á cuya instancia se había decretado el entredicho de enagenación que pesaba sobre la citada casa, el alzamiento de dicha prohibición de enagenar, y expedido el oportuno mandamiento al Registrador de la Propiedad en las diligencias sobre cumplimiento de dicha sentencia, aquel funcionario había ex-

tion of heirs to pay the debts and fulfill the other obligations of the person from whom the inheritance is derived; plaintiffs prayed that Tomasa Lopez Dominguez, in her own right, and her children Romualdo, Josefa, Bernabé and José Chavarry y Lopez, be adjudged to pay them forthwith the sum of seven thousand *pesos* with the stipulated interest from February 23, 1881, together with the interest accrued thereon from the date the suit was instituted and costs.

On service of the complaint on the defendants Tomasa Lopez Dominguez and her children Romualdo, Josefa, Bernabé and José Chavarry y Lopez, answer was filed thereto by Eduardo Acuña Aybar, Esq., alleging as ground of their defense that the "Audiencia Territorial" of this Island in a judgment rendered September 2, 1880, in an ordinary civil suit instituted by the executor José Pablo Morales, against the estate of José Saturnino Nuñez, at whose instance the injunction prohibiting alienation of the house was issued, dissolved said injunction and issued the proper order to the Registrar of Property, whereupon in compliance with aforesaid judgment the said official, on February 16, 1881, made a memorandum of the cancellation on the margin of the entry of the injunction; that the executor Morales having fulfilled his engagement to dissolve the injunction, the vendee of the house, Chavarry, had not delayed payment of the seven thousand *pesos* that had been left with him, since by deed of October 1, 1881, duly executed before Notary Jimenez y Moreno, of this City, said Morales had acknowledged receipt of aforesaid seven thousand *pesos*, together with accrued interest to that date, from José Peña Chavarry, as representative of Bernabé Chavarry; that the heirs of the deceased succeeded to all his rights and obligations by the mere fact of his death according to Article 661 of the Civil Code, by virtue of which provision, heirs being converted into continuators of the judicial person from whom they derive their rights, all the heirs of Chavarry, namely, his widow and children

tendido en 16 de Febrero de 1881, al márgen del asiento del entredicho la oportuna nota de cancelación; que cumplido por parte del Albacea Sr. Morales su compromiso de alzar el entredicho, el comprador de la casa, Sr. Chavarry, no demoró por su parte el pago de los siete mil pesos que habían quedado en su poder, pues por escritura de 1º de Octubre de 1881, otorgada ante el Notario Gimenez y Moreno de esta Capital, confesó el Albacea Sr. Morales, haber recibido con aquel carácter y de manos de Don José Peña Chavarry, como apoderado de Don Bernabé, los siete mil pesos expresados y sus intereses hasta aquella fecha: que los herederos suceden al difunto por el solo hecho de su muerte en todos sus derechos y obligaciones, conforme al Artículo 661 del Código Civil, por virtud de cuyo precepto que convierte á los herederos en continuadores de la personalidad jurídica del causante, son todos los herederos de Don Bernabé Chavarry, ó sea su viuda y sus siete hijos, los que en todo caso vendrían obligados al pago de la cantidad reclamada, ya que por encontrarse satisfecho cuando se liquidó la herencia, no pudo aquella obligación ser materia de adjudicación á determinados herederos; que la concurrencia de dos ó más acreedores, ó de dos ó más deudores, en una sola obligación, no implica que cada uno de aquéllos tenga derecho á pedir, ni cada uno de éstos deba prestar íntegramente las cosas objeto de aquélla: que ésto solo tiene lugar cuando la obligación expresamente lo determina, constituyéndose con el carácter de solidaria, conforme al artículo 1137 del Código Civil: que la obligación cuyo cumplimiento se reclama exclusivamente á los demandados, no determina lazo alguno de solidaridad entre los llamados á cumplirla, siendo por tanto una obligación colectiva, de la Sucesión Chavarry, que en todo caso ha debido exigirse á todos los herederos, en la proporción de lo que respectivamente hubiesen adquirido de su común causante: que á esta consideración no se opone la circunstancia de ser los demandados, al presente, los únicos dueños de la casa, cuya

would at all events be the ones liable for the amount claim-
ed, for as said amount had been paid when the estate was
liquidated, the obligation could not be adjudged to any
particular heirs; that the concurrence of two or more credi-
tors or of two or more debtors in a single obligation, does
not imply that each one of the former has a right to ask,
nor that each one of the latter is bound to comply in full
with the things which are the object thereof; this is so only
when it is expressly stated in the document, a joint obliga-
tion being then constituted according to Article 1137 of the
Civil Code; that the obligation the compliance whereof is de-
manded only of the defendants, fails to show that those call-
ed upon to comply with the same are severally bound to do
so, it being therefore, a joint obligation on the part of the
Chavarry estate, which in any event should have been
claimed of all the heirs in proportion to what each had
respectively acquired from the deceased; that this consid-
eration is not overcome by the circumstance that the defen-
dants are at present the sole owners of the house, the sale
whereof gave rise to the obligation which it is proposed to
enforce, since the suit does not involve a real action against
said property directly binding the owners and possessors
thereof to the performance of the obligation; nor can it be
sustained upon sound principles of law, that the provision
contained in Article 1084 of the Civil Code may serve as a
basis for a demand by plaintiffs on the defendants for
the payment of an obligation affecting all the co-heirs,
inasmuch as the provision of said Article is related to
that of 1082, which requires that the creditor shall be
recognized as such, a circumstance which does not exist
in this case, since the defendants do not recognize the
plaintiffs as legitimate creditors merely because their father
had paid the obligation in question to the executor José
Pablo Morales, and especially when the plaintiffs have also
failed to show that the defendants had accepted the inheri-
tance of their father purely and simply, or under the benefit

venta originó la obligación reclamada, ya que en la deman-
da no se ejercita acción real sobre dicha finca que ligue di-
rectamente á sus dueños y poseedores al cumplimiento de
la obligación: que tampoco puede sostenerse en buenos
principios de derechos que el precepto contenido en el ar-
tículo 1084 del Código Civil sirva de fundamento á los de-
mandantes para exigir á los demandados determinadamente
el pago de una obligación que afecta á todos los coherede-
ros, toda vez que la disposición de dicho artículo está rela-
cionada con la del 1082 que exige en el acreedor la cualidad
de ser reconocido como tal, circunstancia que no concurre
en el presente caso, toda vez que los demandados no recono-
cen á los demandantes como acreedores legítimos, en el
mero hecho de haber pagado su padre la obligación de que
se trata, al Albacea Don José Pablo Morales, máxime cuando
tampoco han acreditado los demandantes que los contestan-
tes hubieran aceptado la herencia de su difunto padre, pura
y simplemente, ó á beneficio de inventario, como lo exige
el artículo 1084 del citado Código, para que el acreedor
pueda reclamar de cualquiera de los herederos, después de
practicada la partición, el todo de la deuda ó una parte de
ella, según los casos: que la obligación se extingue, entre
otros modos, por el pago ó cumplimiento, según el artículo
1156 del Código citado y según el 1162 para que el pago
produzca sus efectos liberatorios, debe hacerse á la persona
en cuyo favor estuviese constituida la obligación, ó á otra
autorizada para recibirla en su nombre; y en virtud de es-
tos preceptos, el pago que Don José Peña Chavarry, como
mandatario de Don Bernabé, había hecho á Don José Pablo
Morales y éste confesó en escritura de 1º de Octubre de
1881, como hecho por persona capaz, sobre obligación deter-
minada y expresa, y recayendo en quien legalmente estaba
autorizado para recibirlo, atendidas las facultades que le
había conferido la testadora Doña Carmen Grau en la cláu-
sula 9ª de su testamento, tiene completa eficacia liberatoria,
determinando en su consecuencia la extinción de la obliga-

of inventory, as required by Article 1084 of aforesaid Code, in order that the creditor may claim from any of the heirs, after the division has been made, either the whole or part of the debt, as the case may be; that an obligation is extinguished, among other ways, by its payment or fulfillment according to Article 1156 of the same Code, and according to Article 1162, in order that a payment may have the effect of releasing the debtor, it must be made to the person in whose favor the obligation is constituted, or to another authorized to receive it in his name; and on the strength of these provisions, the payment made by José Peña Chavarry as representative of Bernabé Chavarry, to Morales and acknowledged by the latter in a public document dated October 1, 1881, having been made by a person legally qualified, upon a definite and express obligation, and to a person who was legally authorized to receive it in view of the powers conferred upon him by the testatrix, Carmen Grau, in the ninth clause of her testament, has the effect of a release, and, consequently of extinguishing the obligation in compliance wherewith said payment was made; that the sum received by the executor José Pablo Morales, must have been distributed among the legatees and heirs, is vouched for by the reputation for respectability and honesty enjoyed by the said executor, and the number of years, during his life-time and after his death, which were allowed to elapse by the heirs, who are needy persons, without prosecuting this claim; that in addition to the allegation of payment having been made they, the defendants, had to allege the prescription of the action which was in no way incompatible with, or contradictory to the former, the action brought being purely a personal one, the date when it arose must be considered. The injunction prohibiting alienation was dissolved on September 2, 1880, at that time the Civil Code was not in force, and according to the laws then existing, namely, law 63 of Toro, that is to say, the 5th, Title 8th, Book 9, of the "Novisima Copila-

ción que lo motivó : que la suma recibida por el Albacea Don José Pablo Morales, debió ser distribuida entre los legatarios y herederos, lo demuestra el carácter y condiciones de respetabilidad y honradez de dicho albacea y el largo número de años transcurridos, ya durante su vida, ya después de su muerte, sin haberse deducido la presente reclamación por los herederos, que son personas muy necesitadas ; que además de la excepción de pago habían de alegar la de prescripción de la acción, por ningún concepto incompatible, ni contradictoria, con aquélla : que siendo la acción deducida puramente personal, había que buscar la fecha de su nacimiento, que fué el 2 de Septiembre de 1880, cuando quedó alzado el entredicho de enagenación ; que en esa época no regía el Código Civil y según la legislación entónces vigente, la ley 63 de Toro, ó sea la 5ª, Título 8, libro 9 de la Novísima Copilación, la acción personal prescribía á los 20 años, término que hay que respetar, de acuerdo con el artículo del citado Código Civil, y que habiendo transcurrido desde dicha fecha, hasta la de 6 de Octubre de 1900, que era la de la demanda, más de los 20 años que exigía la expresada Ley de la Novísima para la prescripción de las acciones personales, había prescrito la acción deducida de la demanda, y ningún derecho tenían ya los demandantes para exigir el pago de la obligación de que se trataba ; por cuyos fundamentos concluyó . pidiendo se les absolviera de la demanda, con las costas á los demandantes.

*Resultando :* que recibido el pleito á pruebas y admitidas las propuestas, se trajeron á solicitud de la parte actora y se agregaron á los autos á fojas 62, tres certificaciones del Registrador de la Propiedad de esta Capital, la primera, de 1°. de Octubre de 1900, de la inscripción de la casa número 15, de la calle de la Cruz de esta Capital, á favor de Doña Tomasa Lopez Dominguez y sus hijos Don Romualdo, Doña Josefa, Don Bernabé y Don José Chavarry y Lopez ; la segunda, creditiva de que examinada la inscripción primera de la finca número 420 al folio 232 del tomo 9 de la Capital,

ción", personal actions prescribed after twenty years, a term which must be respected in accordance with the Article of aforesaid Civil Code, and inasmuch as from that date up to October 6, 1900, which was the date on which the complaint was filed, there had been a lapse of more than the twenty years required by the aforesaid law of the "Novísima", for the prescription of personal actions, the action maintained in the complaint had prescribed, and plaintiffs had no longer any right to demand payment of the obligation in question; and for the reasons above set forth, defendants prayed that the suit be dismissed with costs against plaintiff. The case having come up for trial, the proceeding for the taking of evidence was commenced and after the admission of the evidence proposed, at the request of plaintiffs, three certificates from the Registrar of Property of this City, were presented and attached to the record at folio 62, namely, one of the record of house No. 15, Cruz Street, in favor of Tomasa López Dominguez and her children Romualdo, Josefa, Bernabé and José Chavarry y Lopez; another one to the effect that on examination of the first record of property No. 420, folio 232, Volume 9 of the Capital, which begins with a certificate of the entry appearing at folio 6 of Book 30 of the old Registry, at folio 233, there appeared on the margin thereof an entry which being literally transcribed reads: "The mention made opposite hereto, of the mortgage of seven thousand *pesos* is canceled pursuant to the provision of the Royal Order of May 8th, last"; which annotation appears as having been made under date of October 6, 1894, by Registrar Beyens, and that examination having also been made of entry No. 8 on folio 6, Book 30, of the old Registry, there appeared no annotation referring to the cancellation of seven thousand *pesos* which, as stated in said entry, had remained in the hands of Bernabé Chavarry secured by a mortgage on property No. 15, Cruz Street, in this City; in the third certificate it was set forth that on the reverse side of folio

que empieza certificando el asiento que aparece al folio 6 del libro 30 del antiguo Registro, al folio 233 vuelto, y al margen de dicha inscripción primera, aparece una nota que copiada á la letra dice así: "Cancelada la mención referente á la hipoteca de siete mil pesos del frente, y en armonía con lo que dispone la Real Orden de 8 de Mayo último"; cuya nota aparece extendida con fecha 6 de Octubre de 1894 por el Registrador Sr. Veyes; y que examinado asimismo el asiento número 8 del folio 6 del libro 30 del antiguo Registro, no aparecía nota referente á la cancelación de siete mil pesos que quedaron, según dicho asiento expresa, en poder de Don Bernabé Chavarry, con hipoteca sobre la finca número 15 de la calle de la Cruz de esta Capital; y la tercera, que al folio 213 vuelto, del tomo 2 del Diario, existía un asiento de presentación de la primera copia de una escritura otorgada en esta Capital en 27 de Enero de 1877, ante el Notario Don Demetrio Gimenez y Moreno, por la que Doña Isabel Cebollero daba carta de pago de una hipoteca de 6500 pesos; que con liquidación de intereses ascendía á la suma de 7172 pesos 50 centavos, que pesaba sobre la casa número 15 de la calle de la Cruz de esta Capital; y que al margen de dicho asiento existía una nota, según la cual había sido denegada la inscripción del anterior documento, por resultar hecha la cancelación que comprendía, en virtud de otra escritura de la misma fecha, por nota marginal al asiento número 9 folio 4 del libro 26 del antiguo Registro. También se trajeron á solicitud de los demandantes, y se agregaron á fojas 79 vuelto de los autos, dos certificaciones de los Notarios Don Mauricio Guerra Mondragón y Mejías y Don Santiago R. Palmer, de los que resulta que revisados los índices de los respectivos archivos á su cargo, no aparecía en ellos ninguna carta de pago otorgada por Doña Mercedes Morales ni por Don José Carambot, en su nombre ni en el de sus hijos Juan y Santiago del mismo apellido, á favor de Don José Pablo Morales, como albacea testamentario de Doña Carmen Grau y Herrero, de unos legados de

213, of volume 2 of the day book, there was an entry referring to the presentation of the first copy of a deed executed in this City on January 27, 1887, before Notary Jimenez y Moreno, whereby Isabel Cebollero acknowledged the full payment of a mortgage for six thousand and five hundred *pesos*, which, with accrued interest, amounted to seven thousand, one hundred and seventy-two *pesos*, and fifty *centavos*, and constituted a lien upon house No. 15, Cruz Street, in this City; that on the margin of said entry there was a memorandum to the effect that entry of the preceding document had been refused, because the cancellation mentioned therein had been made by virtue of another deed of the same date, by a marginal note to entry No. 9, folio 4, Book 26, of the old Registry. Likewise at the request of plaintiffs, there were brought and attached to the record at the reverse side of page 79 two certificates from the Notaries Mauricio Guerra Mondragón y Mejías and Santiago R. Palmer, setting forth that upon searching the indices of their respective archives, there appeared no record of any acquittance from either Mercedes Morales or José Carambot in his name or in the name of his children Juan and Santiago, of the same surname, in favor of José Pablo Morales, as testamentary executor of Carmen Grau y Herrero, for legacies of two thousand *pesos* each, that had been left them respectively by the latter in her testament, and further that there appeared on file no record of the proceedings relating to the probate of Carmen Grau's will. At the request of defendants there was also submitted the certificate of the instrument of release executed in this City on October 1, 1881, before Notary Demetrio Jimenez y Moreno, by José Pablo Morales in the capacity of testamentary executor for Carmen Grau y Herrero, in favor of Bernabé Chavarry, for the sum of the seven thousand *pesos* that had been delivered to the latter as the balance due on house No. 15, Cruz Street, in this City, together with the stipulated interest to that date, by virtue of the dissolution of the

dos mil pesos cada uno que les dejara respectivamente dicha Sra. en su testamento; así como tampoco la diligencia de protocolización de las operaciones testamentarias de la expresada Doña Carmen.  Se trajo también á solicitud de los demandados, y obra al folio 80 vuelto, el testimonio de la carta de pago otorgada en esta Capital en 1º de Octubre de 1881, ante el Notario Don Demetrio Gimenez y Moreno, por Don José Pablo Morales en su carácter de albacea testamentario de Doña Carmen Grau y Herrero, á favor de Don Bernabé Chavarry, por la suma de los siete mil pesos que habían quedado en poder de éste, como resto del precio de la casa número 15 de la calle de la Cruz de esta Capital, con los intereses estipulados hasta aquella fecha, á virtud de haber quedado cancelado el entredicho de enagenar que pesaba sobre la citada casa: declarando en el acto del juicio oral los testigos presentados por los demandados, Don Mauricio Guerra Mondragón, Don Antonio Gutierrez, Don Julián Blanco y Don Euclides Gimenez, que conocieron á Don José Pablo Morales, el que les merecía el mejor concepto y no creían que habiendo recibido dicho Sr. una cantidad para distribuirla entre otras personas, se hubiera quedado con ella; y Don Jesús Pesquera, testigo presentado por los demandantes, que encontrándose en el Registro de la Propiedad de esta Capital, se presentó una carta de pago, para cancelación por Don José Pablo Morales, la cual fué denegada, consultándose el caso con el Sr. Escosura, en Madrid, el que fué de la misma opinión del Registrador, Sr. Veyens.

*Resultando:* que terminado el juicio oral dictó sentencia el Tribunal del Distrito de San Juan, en 13 de Enero de 1902, por la que, declarándose sin lugar las excepciones de pago y de prescripción alegadas por los demandados, con excepción de la de los intereses que excedieran de los últimos cinco años, se declaró con lugar la demanda, condenándose en su consecuencia á los demandados Doña Tomasa López Dominguez y sus hijos Don Romualdo, Doña Josefa, Don Bernabé y Don José Chavarry y López, al pago de los

injunction prohibiting alienation of the property, which certificate appears on the reverse side of folio 80; witnesses for defendants, Mauricio Guerra Mondragón, Antonio Gutierrez, Julián Blanco and Euclidez Jimenez, testified that they had known José Pablo Morales, of whom they entertained the highest opinion, and did not believe him capable of appropriating to his own use any sum that had been entrusted to his care for distribution among other persons; and Jesús Pesquera, witness for plaintiffs, testified that he was present at the Registrar's office when a deed of release to secure cancellation was presented by José Pablo Morales, and its admission to record was denied, and the Señor Escosura, in Madrid, having been consulted in regard to the case, he was of the same opinion as the Registrar, Señor Beyens.   The hearing having been had, judgment was rendered by the District Court of San Juan, on January 13, 1902, overruling the exceptions of payment and prescription alleged by defendants, except the one in regard to the interest accrued after the last five years, the said court sustaining and adjudging the defendants Tomasa López Dominguez and her children Romualdo, Josefa, Bernabé and José Chavarry y Lopez, to pay the seven thousand *pesos* claimed, with interest at the rate of six per cent per annum, accruing during the five years prior to the filing of the complaint, it being, however, understood that said payment was to be made in the amount corresponding to each, proportionally with the other heirs of Chavarry who had not been made defendants in the case, taking into account the share that had been respectively alloted to each in the estate of their deceased father, to ascertain which a liquidation was ordered to be made in carrying out the judgment; without any special imposition of costs.

From this decision an appeal in cassation for violation of law was taken to this Court by counsel for defendants, which was allowed and the record having been forwarded to this Supreme Court, with citation of the parties, and upon their

siete mil pesos reclamados, con sus intereses á razón del seis por ciento anual, correspondientes á los cinco años anteriores á la admisión de la demanda; pero entendiéndose tan solo en la cantidad correspondiente á cada uno, en proporción con los demás herederos de Don Bernabé Chavarry que no habían sido demandados en el juicio, atendida la participación que respectivamente les había correspondido en la herencia de su difunto padre, y para lo cual se practicaría en la ejecución de esta sentencia la liquidación correspondiente, sin especial condenación de costas.

*Resultando:* que contra esta sentencia se interpuso por la representación de los demandados recurso de casación por infracción de ley, que le fué admitido; y elevados los autos á esta Superioridad con citación y emplazamiento de las partes, personadas éstas, se entregaron los autos al Abogado defensor de los recurrentes para formalizar el recurso, lo que verificó, fundándolo en los números 1 y 7 del artículo 1,690 de la Ley de Enjuiciamiento Civil, y citando como infringidos:

I.—El artículo 901 del Código Civil, y sus concordantes, las Leyes 3 y 32 del Título 11, Partida 6ª, así como la doctrina legal establecida en las sentencias del Tribunal Supremo de Madrid de 3 de Junio y 17 de Diciembre de 1,864 y 17 de Enero y 14 de Marzo de 1,866, al no reconocer en el albacea Don José Pablo Morales, nombrado en la cláusula 10ª, del testamento otorgado por Doña Carmen Grau el 14 de Noviembre de 1,876, y autorizado especialmente para la venta de cierta casa, capacidad legal para percibir la parte del precio aplazado en dicha venta, por razón de cierto entredicho de enagenación á cuyo alzamiento definitivo se subordinó la entrega de esa parte de precio. Las disposiciones legales que quedan citadas, y la doctrina establecida en las referidas sentencias, reconocen en los albaceas testamentarios capacidad legal para realizar todos los actos que les hayan sido encomendados por los testadores y no sean contrarios á las Leyes; de manera que por razón de aquéllas, la única fuente á que puede acudirse para la determinación del límite de sus facultades, es la voluntad del testador, expresada en las cláusulas del testamento é interpretada llanamente; y por consiguiente habiendo sido autorizado el albacea Don José Pablo Morales, por la testadora Doña Carmen Grau, para otorgar la escritura de venta de la casa, repartiéndose sus herederos y legatarios el importe de dicha venta. es claro y

appearance the record was delivered to counsel for appellants in order that he might perfect the appeal, which he did basing the same upon paragraphs 1 and 7 of Article 1690 of the Law of Civil Procedure, citing as having been violated:

I.—Article 901 of the Civil Code, taken in connection with Laws 3 and 32, Title 11, *Partida* 6, as also the legal principle announced by the decisions of the Supreme Court of Madrid, of June 3rd, and December 17, 1864, and January 17, and March 14, 1866, in not recognizing in the executor José Pablo Morales, appointed under clause 10, of the will executed by Carmen Grau, on November 14, 1876, and especially authorized to sell a certain house, legal capacity to receive the portion of the price that had been left unpaid pending the outcome of an injunction prohibiting alienation of the property. The aforementioned legal provisions and the doctrine established in the decisions referred to, recognize in testamentary executors legal capacity to carry out all the acts that have been committed to them by the testator and which are not contrary to law. So then, pursuant thereto the only source to which we must go in order to determine the extent of their powers, is the will of the testator, set forth in the clauses of testament and clearly construed. Hence, the executor José Pablo Morales having been authorized by the testatrix, Carmen Grau, to execute the deed of sale of the house, the amount whereof was to be distributed among her heirs and legatees, it is clear and evident, as coming within the power to sell and inherent thereto, that he was also authorized to receive the price, whether paid in cash or deferred by reason of some obstacle preventing the sale.

II.—The principle of law by which a man is estopped from alleging or denying a fact contrary to his own previous acts, a principle which has been recognized in numerous opinions rendered by the Supreme Court of Madrid, among others, those of December 27, 1873, July 3, 1876, and December 1, 1886, in permitting the heirs of Carmen Grau, plaintiffs in this case, to recognize the fact that the executor Morales had legal capacity to effect the sale of the house and to receive the part of the price which was to be paid in cash, and yet deny that he had such capacity to receive the outstanding balance thereof, which was the object of the deed of October 1, 1881, for the authority and capacity assumed by the executor in performing both acts being the same, the latter cannot be contested as illegal, when the validity and efficacy of the former have been recognized.

III.—Laws 3 and 5, Title 14 of *Partida* 5, taken in connection with Articles 1156 and 1162 of the old Civil Code, the former of which prescribes as one of the ways of extinguishing obligations, the payment or fulfillment thereof, and the latter recognizes the releasing effect of a payment made to the person in whose favor the obligation is constituted, or to another autho-

evidente, aún dentro de la facultad de vender y como inherente de la misma, entraba la de percibir el precio, tanto si se satisfacía de contado, como si se aplazaba por razón de algún obstáculo que se opusiere á la venta.

II.—El principio de derecho de que nadie puede ir contra sus propios ac- tos, principio reconocido en repetidas sentencias del Tribunal Supremo de Madrid, entre otras, las del 27 de Diciembre de 1873, 3 de Julio de 1876 y 1º de Diciembre de 1886, al permitir que los herederos de Doña Carmen Grau, demandante en este juicio, atribuyan y reconozcan en el albacea Morales capacidad legal para efectuar el acto de venta y para percibir la parte de precio que recibió de contado, y no se la concedan para el percibo del precio aplazado que fué objeto de la escritura de 1º de Octubre de 1881; pues siendo unas mismas las facultades y personalidad asumidas por el albacea al realizar aquellos actos, no puede impugnar el segundo por ilegal, quien reconoce validez y eficacia en el primero.

III.—Las Leyes 3ª y 5ª del Título 14 de la Partida 5ª y sus concordantes los artículos 1156 y 1162 del antiguo Código Civil; el primero en cuanto establece como modo de extinguir las obligaciones, la paga ó cumplimiento, y el segundo en cuanto reconoce y concede completa eficacia liberatoria al pago hecho á la persona á cuyo favor está constituida la obligación, ó á otra autorizada para recibirla á su nombre. Por razón de tales preceptos debe reconocerse el pago que Don Bernabé Chavarry hizo por medio de su apoderado al albacea Don José Pablo Morales, y fué materia de la escritura de 1º de Octubre de 1881, todos los efectos liberatorios que debían determinar la extinción de la obligación contraida, por cuanto recayó en persona legalmente autorizada para recibirlo, no solo en virtud de las facultades especiales que le concediera la testadora, si que también por su carácter de mandatario del testador, carácter atribuido á todo albacea testamentario á quien se comete el encargo de organizar la testamentaría y partir los bienes, en la doctrina legal contenida en la sentencia de 4 de Julio de 1895; y si bien es cierto que de la escritura de venta aparecía constituida la obligación de satisfacer los siete mil pesos aplazados á favor de Doña Carmen Grau, ó sus herederos, no es dudoso que en la fecha de dicho pago conservara Morales la plenitud de sus facultades como albacea, según lo demuestra, por una parte, la circunstancia de que esa porción del precio aplazado venía á manos de Morales con el fin de distribuirla entre los herederos y legatarios de la Sra. Grau, acto propio y exclusivo del albacea, y por otra, que estando subordinado el pago á la condición de alzarse el entredicho que afectaba á la casa vendida y comprometido el albacea á continuar practicando las gestiones necesarias para obtener ese alzamiento definitivo, no era posible dar por terminadas sus funciones hasta el momento en que, cancelado el entredicho y percibido el precio, se repartiese entre los herederos, quedando así cumplida

rized to receive it in his name. On the strength of these provisions, the payment made by Bernabé Chavarry, through his attorney, to the executor José Pablo Morales, and which was the subject-matter of the deed of October 1, 1881, should be recognized as having the effect of extinguishing the obligation contracted, inasmuch as said payment was made to a person legally authorized to receive it, not only by virtue of the special powers conferred upon him by the testatrix, but also by reason of his character as agent of the testator, a character pertaining to all testamentary executors charged with the duty of carrying out the wishes expressed in the will and of making the partition of the estate, according to the legal doctrine laid down in the judgment rendered July 4, 1895; and although it is true that by the deed of sale the obligation to pay the outstanding seven thousand *pesos* to Carmen Grau or her heirs, was constituted, there can be no doubt that at the date of said payment Morales still retained all the powers of an executor, as shown on the one hand, by the fact that aforesaid portion of the outstanding price was handed him for the purpose of distributing same among the heirs and legatees of Carmen Grau, a duty appertaining exclusively to an executor, and, on the other, that said payment being conditioned upon the dissolution of the injunction which constituted an incumbrancy upon the house, for the fulfillment whereof the executor had engaged to continue his efforts to procure its final dissolution, his duties could not be considered as having terminated until said injunction had been dissolved and the price received and distributed among the heirs, thereby complying with the wishes of the testatrix, the execution of which had been wholly entrusted to her executor.

IV.—Article 1164 of aforesaid Civil Code which recognizes the releasing efficacy of a payment made in good faith to the person who holds the credit, which circumstances exist in the present case, in view of the powers that had been conferred upon the executor by Carmen Grau in the clause appointing him executor, and the stipulations contained in the deed of sale, which if not empowering him to receive the outstanding price, recognized him at least, as being in possession of the credit; to which consideration should be added the perfect good faith in which Chavarry made the payment as soon as he was called upon to do so, upon the fulfillment of the condition stipulated in the deed.

V.—Articles 1248 of the Civil Code and 658 of the Law of Civil Procedure, in not giving due weight to the testimony of the witnesses Mauricio Guerra, Julián Blanco y Sosa, Euclides Jimenez and José A. Gutierrez, all of whom concurred in proclaiming the respectability and integrity wherewith Morales had characterized every act of his life, whence it is to be inferred that the sum legally paid him by the debtor Chavarry, could have had no

la voluntad de la testadora, cuya ejecución se cometió en su totalidad á su albacea.

IV.—El Artículo 1164 del propio Código Civil, que reconoce igual eficacia liberatoria al pago hecho de buena fé por el deudor, á la persona que estuviese en posesión del crédito, circunstancias que concurren en el caso presente, atendidas las facultades conferidas al albacea por Doña Carmen Grau en la cláusula de su nombramiento, y las estipulaciones de la escritura de venta, que si no capacitaban al albacea para la percepción del precio aplazado, le atribuian, cuando menos, el carácter de poseedor del crédito; á lo que se agrega la perfecta buena fé con que procedió el Sr. Chavarry al verificar el pago, tan pronto fué requerido; por estar cumplida la condición establecida en la escritura.

V.—Los artículos 1248 del Código Civil y 658 de la Ley de Procedimiento, al dejar de apreciar la Sala sentenciadora el mérito de las declaraciones de los testigos Don Mauricio Guerra, Don Julián Blanco y Sosa, Don Euclides Gimenez y Don José A. Gutierrez, contestes todos en proclamar la respetabilidad y honradez con que revistió todos los actos de su vida el Sr. Morales, de donde se deduce que la cantidad legalmente satisfecha á éste por el deudor, Sr. Chavarry, no pudo tener ni tuvo otro destino que el de distribuirse entre los herederos y legatarios; distribución cuya realidad viene á justificar el estado de fortuna de los demandantes, igualmente comprobado por las manifestaciones de dichos testigos, y dejado de apreciar en el fallo, merced al cual no tiene aplicación satisfactoria, que personas de escasos medios de vivir hayan demorado por tan largo número de años la reclamación de lo que en ley creían corresponderle.

VI y último.—El artículo 1969 del mismo Código Civil, al no reconocer que la obligación de entregar los siete mil pesos aplazados de la venta, fué exigible desde el día 2 de Septiembre de 1880, fecha en que se dictó por la Audiencia de esta Isla la sentencia mandando levantar el entredicho. Las distintas cláusulas de la escritura de venta de 22 de Enero de 1877, que se contraen á la obligación del Chavarry de entregar el precio aplazado, lo refieren literalmente al día en que se alce el entredicho, definitivamente, y no al en que se efectuase en el Registro de la Propiedad la cancelación del asiento del entredicho, que son actos distintos, que en modo alguno pueden confundirse. Si, pues, el entredicho quedó alzado desde el momento en que recayó sentencia en el pleito seguido con este motivo, y por tanto cumplida la condición á que quedó subordinado el pago del precio aplazado, el derecho de los demandantes, á exigirlo, nació ese día, ó sea en la fecha de la sentencia, y al no reconocerlo así el Tribunal sentenciador, y desechar la excepción de prescripción alegada, fundándose en que no han transcurrido veinte años, término exigido por la Ley 5ª, Título 8, Libro 14 de la Novísima Compilación, para la prescripción de las acciones personales, infringe no solo

application other than that of being distributed among the heirs and legatees; that this distribution was made is shown by the pecuniary circumstances of the plaintiffs, likewise confirmed by the statement of said witnesses, and not taken into account by the Court as it should have done, for it is not to be presumed that persons with scarcely any means of subsistence should have delayed so long in claiming what they believed was legally due them.

VI and last.—Article 1969 of the Civil Code, in not recognizing the fact that the obligation to deliver the outstanding seven thousand *pesos* was enforceable from the 2nd day of September, 1880, the date of the judment rendered by the "Audiencia" ordering the dissolution of the injunction. The various clauses of the deed of sale of January 22, 1877, with respect to Chavarry's obligation to deliver the balance of the purchase price, refer to the date when the injunction should be finally dissolved, and not to that of the entry thereof in the Registry of Property, which are distinct and independent acts that should not be confused. If, then, the injunction was disolved from the moment judment was rendered in the suit instituted for that purpose, thus complying with the condition required for payment of the balance of the purchase price, the right of plaintiffs to demand said payment began on that day, namely, the date of the judgment, and in failing to recognize this fact and overruling the exception of prescription alleged on the ground that twenty years had not elapsed as prescribed by Law 5, Title 8, Book 14 of the "Novísima Compilación", for the prescription of personal actions, the Court has violated, not only the provision of aforesaid Article 1969 of the Civil Code, but also Article 1114 of the same Code, which provides that in conditional obligations, the acquisition of rights shall depend upon the event constituting the condition and the foresaid Law of :the "Novísima", namely, 63 Toro, all of which have been violated by reason of their non-application.

*Mr. Acuña (Eduardo)*, for appellants.

*Mr. Texidor*, for respondents.

Mr. Chief Justice Quiñones, after making the above statement of facts, rendered the following opinion of the Court:

Although under Law 3, Title 10, *Partida* 6, and Article 901 of the old Civil Code, concordant thereto, as also the doctrine of the Supreme Court of Spain cited in the first allegation of the appeal, the functions of executors depended on the powers which testators saw fit to invest them with in

la disposición del citado artículo 1969 del Código Civil, si que también el 1114 del propio Código, que hace depender del acontecimiento que constituya la condición, la adquisición de los derechos en las obligaciones condicionales, y la ley citada de la Novísima, ó sea la 63 de Toro, todas ellas por su no aplicación.

Abogado de los recurrentes: *Sr. Acuña (Eduardo).*

Abogado de los recurridos: *Sr. Texidor.*

EL JUEZ PRESIDENTE SR. QUIÑONES, después de exponer los hechos anteriores, emitió la siguiente opinión del Tribunal:

*Considerando:* que si bien con arreglo á la Ley 3ª, Título 10, Partida 6ª, y su concordante el Artículo 901 del antiguo Código Civil, y á la doctrina del Tribunal Supremo de Justicia de España, que se citan en el primer motivo del recurso, la capacidad de los albaceas dependía de las facultades que quisieran conferirles los testadores en las cláusulas de su nombramiento, y que en este concepto procedió en el lleno de sus atribuciones el albacea don José Pablo Morales, al otorgar á favor de Don Bernabé Chavarry la escritura de venta de la casa de que se trata en estos autos, en uso de las facultades que le confirió la testadora Doña Carmen Grau, en la cláusula novena de su testamento, ésto, no obstante, desde el momento en que otorgó dicha escritura, y que en ella dejó establecida definitivamente la aplicación que debía darse á los siete mil pesos restantes del precio de la venta, conviniendo en que se dejaran en poder del comprador á las resultas del entredicho de enagenar que pesaba sobre la casa, para que tan pronto se alzara dicha interdicción, los entregara á los herederos de Doña Carmen Grau, y que, mientras tanto, les pasara mensualmente el interés convenido, á razón del seis por ciento anual, es evidente que con estos actos realizados por el albacea y las gestiones que en la misma escritura se obligó á practicar hasta obtener el alzamiento del entredicho, quedó terminada su misión sobre la venta de la casa, y ya no le fué lícito volver después sobre sus propios actos, para dejar sin efecto lo que tan solemnemente

the testamentary clauses referring to their appointment as such, and according thereto, executor Morales in executing the deed of sale of the house in question in favor of Chavavarry, acted fully within the powers conferred upon him by the testatrix Carmen Grau in the ninth clause of her will, yet, from the moment said deed was executed, wherein it was finally determined what disposition should be made of the seven thousand *pesos*, balance of the purchase price left in the hands of the vendee subject to the outcome of the injunction prohibiting alienation of said house, which sum was to be paid to the heirs of Carmen Grau as soon as aforesaid injunction had been dissolved, and the vendee in the meantime to pay monthly to said heirs the stipulated interest at the rate of six per cent per annum thereon, it is evident that with these acts of the executor and the steps which in the deed he had agreed to take looking to the dissolution of the injunction, his trust in connection with the sale of the house had come to an end, and he could no longer legally go against his own acts, and thus leave without effect what had solemnly been agreed upon in the deed as to the delivery of the unpaid balance of seven thousand *pesos*, and interest thereon, to the heirs; therefore the Court below in so deciding, did not contradict itself nor violate the laws and other legal provisions cited in the first and second grounds of the appeal. Nor have Laws 3 and 5, Title 14 of *Partida* 5, and Articles 1156, 1162, and 1163 of the Civil Code, concordant thereto, cited under grounds III and IV, been violated, inasmuch as the vendee, Bernabé Chavarry, having bound himself in the deed of sale in question to pay the outstanding seven thousand *pesos*, and stipulated interest accrued thereon, directly to the heirs of Carmen Grau, he had to make said payment to them as the only creditors in whose favor the obligation was constituted, and not to the executor José Pablo Morales, whose capacity to effect the collection of that part of the price had already ceased by virtue of the reservation in favor of the heirs made in the deed. Whence it is further to be inferred, that neither the exe-

había quedado escriturado y convenido, sobre entrega á los herederos de los siete mil pesos aplazados del precio de la venta y sus intereses; por lo que, al declararlo así la Sala sentenciadora, no ha incurrido en contradicción alguna, ni ha infringido las leyes y demás preceptos legales que se citan en el primero y segundo motivos del recurso.

*Considerando :* que tampoco han sido infringidas las leyes 3ª y 5ª del Título 14 de la Partida 5ª y sus concordantes los artículos 1156, 1162 y 1163 del antiguo Código Civil, que se citan en los motivos 3º y 4º, toda vez que habiéndose obligado el comprador Don Bernabé Chavarry, en la escritura de compra-venta de que se trata, á pagar los siete mil pesos del precio aplazado, y sus réditos al interés convenido, directamente á los herederos de Doña Carmen Grau, á éstos debió hacer el pago como únicos acreedores á cuyo favor aparecía constituida la obligación, y nó al albacea, Don José Pablo Morales, cuya capacidad para realizar el cobro de aquella parte del precio había cesado ya á virtud de la reserva establecida en la escritura á favor de los herederos; de donde se infiere, además, que ni el albacea Don José Pablo Morales, era tal poseedor del crédito, como lo supone la representación de los recurrentes, ni el deudor Don Bernabé Chavarry pudo pagárselo de buena fé, cuando no podía ignorar el compromiso que había contraido en la escritura de pagarlo, con los intereses convenidos, á los herederos de Doña Carmen Grau, llegado que fuere el día del cumplimiento de la condición establecida; y por consiguiente, que el pago hecho por el deudor, Don Bernabé Chavarry, al albacea, Don José Pablo Morales, no releva al primero, hoy á su sucesión, de la obligación que tenía contraida para con los expresados herederos.

*Considerando :* en cuanto al error de derecho en la apreciación de las pruebas, en que se funda el quinto motivo del recurso, que léjos de haber infringido la Sala sentenciadora los artículos 1248 del Código Civil y 658 de la Ley procesal vigente, al no conceder valor alguno á las declaraciones de

cutor José Pablo Morales was the holder of the credit, as alleged by counsel for appellants, nor could the debtor Bernabé Chavarry, have paid it to him in good faith, since he must have been aware of his agreement made in the deed, to pay said debt with the stipulated interest, to the heirs of Carmen Grau as soon as the condition agreed upon had been fulfilled, and, therefore, the payment made by the debtor Bernabé Chavarry, to the executor Morales, does not relieve the former, or his estate, from the obligation contracted by him with regard to the aforesaid heirs. As to the error of law in the consideration of evidence, on which the fifth ground of the appeal is based, the Court below, far from violating Articles 1248, of the Civil Code, and 658 of the Law of Civil Procedure, in not attaching any importance to the statements of the witnesses Mauricio Guerra Mondragón, José Antonio Gutierrez, Julián Blanco and Euclides Jimenez, has correctly applied said legal provisions, by which Courts of Justice are allowed a wise discretion in the consideration of the probatory value of the testimony of witnesses, with no limitation other than the rules of sound judgment, none of the 'provisions cited having been violated, inasmuch as the testimony of the aforesaid witnesses was limited to the statement that the executor José Pablo Morales was held by them in high esteem and that they believed him incapable of appropriating to his own use money received by him for a specified purpose, the Court below could not logically consider said declarations as sufficient evidence that said obligation had been complied with by the executor, since none of the witnesses had affirmed that he had really complied therewith, and the matter was especially one in which public documents, acquittances and other vouchers are generally availed of by executors to justify their accounts and at all time relieve themselves from responsibility for sums received by them for distribution among legatees and heirs. As regards the violation, which is also alleged, of Law 63 Toro, namely, the 5th, Title 8, Book 11, of the "Novísima Re-

los testigos, Don Mauricio Guerra Mondragón, Don José
Antonio Gutierrez, Don Julián Blanco y Sosa y Don Eucli-
des Gimenez, ha aplicado rectamente dichos preceptos lega-
les, que dejan á la libre apreciación de los Tribunales de
Justicia el valor probatorio de las declaraciones de los testi-
gos, sin más limitación que las reglas de la sana crítica, de
las cuales no se cita ninguna que haya sido infringida; toda
vez que, habiéndose limitado á declarar los testigos referi-
dos, que el albacea, Don José Pablo Morales, les merecía el
mejor concepto, y que no lo creían capaz de quedarse con un
dinero que hubiera recibido para darle una aplicación de-
terminada, no podía la Sala sentenciadora, en buena lógica,
estimar esas declaraciones como prueba suficiente del cum-
plimiento de aquella obligación por parte del albacea, pues-
to que ninguno de los testigos afirma que realmente la
cumpliera, y cuando precisamente se trata de un asunto en
que lo regular es que intervengan escrituras públicas, cartas
de pago, ú otras pruebas escritas, para justificar sus cuentas
los albaceas y salvar en todo tiempo su responsabilidad por
las cantidades que reciban para distribuir entre legatarios
y herederos.

*Considerando :* en cuanto á la infracción, que también se
alega, de la ley 63 de Toro, ó sea la 5ª, Título 8, Libro 11 de
la Novísima Recopilación y de los artículos 1114 y 1969 del
antiguo Código Civil, que habiéndose estipulado terminan-
temente en la escritura de venta de 22 de Enero de 1877,
que los siete mil pesos restantes del precio quedarían en
poder del comprador, Don Bernabé Chavarry, á las resultas
del entredicho de enagenación que pesaba sobre la casa ven-
dida, no pudiendo disponer de dicha suma los herederos de
Doña Carmen Grau, hasta obtener el alzamiento de aquel
gravámen, "justificado por medio de su cancelación", y con
un mes de aviso anticipado, con cuyas estipulaciones estuvo
en un todo conforme el comprador Don Bartolomé Chava-
rry, obligándose, en su consecuencia, al cumplimiento de todo
cuanto á él le concernía, y en particular, á responder de las

copilación", and of Articles 1114 and 1969 of the old Civil Code, inasmuch as it was expressly stipulated in the deed of sale of January 22, 1877, that the seven thousand *pesos*, balance due on the price, was to remain in the hands of the vendee Bernabé Chavarry, subject to the outcome of the injunction prohibiting alienation wherewith the house was encumbered, and that the heirs of Carmen Grau could not dispose of said sum until the dissolution of the injunction had been secured and "confirmed by means of the cancellation thereof" and after a month's advance notice, which stipulations were agreed to by the vendee in all particulars, Bernabé Chavarry, who thus bound himself to comply with the obligation in so far as it concerned him, and especially to abide by the result of the injunction which constituted an encumbrance upon the said house, until its final legal dissolution, it is evident that until the cancellation of the said injunction had been entered in the Registry of Property, the obligation on the part of the vendee to make payment did not become effective, nor were the heirs in a position legally to demand of him the fulfillment of said obligation, both because such was the agreement entered into in the deed, and because the injunction not being dissolved, operated to the prejudice of third persons until the cancellation thereof had been recorded in the Registry of Property, so long as this was not done, the house did not stand released from the encumbrance, nor was the vendee relieved from responsibility in that respect, and, therefore, inasmuch as from the date of the record of dissolution of the injuntion, February 23, 1881, to that of the admission of the complaint, October 11, 1900, since the date on which the same was filed is not on record, the twenty years required by Law 63 of Toro, namely, the 5th, Title 8, Book 11, of the "Novísima Recopilación", for the prescription of personal actions, which is the nature of the suit prosecuted by plaintiffs, have not elapsed, the Court below in sustaining the complaint, instead of violating aforesaid Law of the "Novísima" and the Articles of the old Civil

resultas del entredicho de enagenación que pesaba sobre la
casa, hasta que hubiera alzado definitivamente dicha inter-
dicción legal, es evidente que hasta que no quedó cancelado
el entredicho en el Registro de la Propiedad, no nació la
obligación de pagar por parte del comprador, ni estuvieron
los herederos en aptitud legal de exigirle el cumplimiento
de aquélla, tanto porque así fué lo convenido en la escritura,
cuanto porque no quedando extinguido el entredicho, en
perjuicio de tercero, hasta su cancelación en el Registro,
mientras ésta no hubiera tenido lugar, ni quedaba la casa
libre de aquella carga, ni el comprador exonerado de respon-
sabilidad por aquel concepto; y por consiguiente, que no
habiendo transcurrido desde la fecha de la cancelación del
entredicho, en 23 de Febrero de 1881, á la de la admisión
de la demanda, en 11 de Octubre de 1900, ya que no consta
la fecha de su presentación, los veinte años que exigía la
Ley 63 de Toro, ó sea la 5ª, Título 8, Libro 11 de la Novísi-
ma Recopilación, para la prescripción de las acciones perso-
nales, á cuya naturaleza corresponde la ejercitada por los
demandantes, tampoco se ha infringido por el Tribunal sen-
tenciador, al declarar con lugar la demanda, antes al contra-
rio, la ha aplicado rectamente, la expresada Ley de la Noví-
sima, y los artículos del antiguo Código Civil, que se citan
en el séptimo y último motivo del recurso.

*Fallamos:* que debemos declarar y declaramos no haber
lugar al recurso de casación por infracción de ley interpues-
to por la representación de Doña Tomasa López Dominguez
y sus hijos Don Romualdo, Doña Josefa, Don Bernabé y
Don José Chavarry y López, á quienes condenamos en las
costas.

Jueces concurrentes: Señores Hernández, Figueras y
MacLeary.

Juez disidente : Sr. Sulzbacher.

*Opinión disidente del Juez Asociado Sr. Sulzbacher.*

Refiriéndome á los hechos de esta causa, según se consignan

Code, cited in the seventh and final point urged by appellants, has, on the contrary correctly applied them.

We should declare, and do declare, that the appeal in cassation for violation of law, taken by Tomasa Lopez Dominguez and her children Romualdo, Josefa, Bernabé and José Chavarry y Lopez, does not lie, and tax the costs against them.

Messrs. Associate Justices Hernandez, Figueras and MacLeary, concurring.

Mr. Associate Justice Sulzbacher, dissenting.

*Dissenting opinion of Associate Justice Sulzbacher:*

Referring to the facts in this case, as stated in the opinion of the majority of the Court, I shall allude only to the part thereof which I deem necessary for the purposes of this dissenting opinion.    Carmen Grau and Estéfana Grau were joint owners of a house in the City of San Juan, No. 15, Cruz Street.    By a document dated November 14, 1876, Estéfana authorized Francisco de Paula Acuña to sell and convey said real estate to Bernabé Chavarry, for the sum of twenty-six thousand *pesos.*    Carmen Grau in her testament, dated November 14, 1876, directed that in case she should die before the sale was effected, it was to be carried out by her executors, or any of them, *the amount of the sale to be apportioned among her heirs and legatees.*    It appears that José Pablo Morales, one of the executors, after the death of Carmen Grau, effected the sale to Chavary, receiving from him the sum of nineteen thousand *pesos,* as partial payment, and according to the instrument executed by said Chavarry in favor of Pablo Morales, dated January 22, 1877 it was stipulated that the former was to retain the sum of seven thousand *pesos,* that is to say, the balance due by him to

en la sentencia de la mayoría del Tribunal, aludiré solamente á la parte de los mismos, que estimo necesarias para los fines de este voto particular. Carmen Grau y Estéfana Grau eran condueñas de una casa en la Ciudad de San Juan, número 15, de la calle de la Cruz. Mediante documento fechado en 14 de Noviembre de 1876, Estéfana autorizó á Francisco de Paula Acuña para vender y traspasar dichos bienes raíces á Bernabé Chavarry, por la suma de veinte y seis mil pesos; Carmen Grau, en su testamento de fecha 14 de Noviembre de 1876, dispuso que en el caso de que ella falleciese antes de verificarse dicha venta, se llevase ésta á efecto por sus albaceas ó cualquiera de ellos, "*repartiéndose sus herederos y legatarios el importe de la venta*".

Consta que José Pablo Morales, uno de los albaceas, después del fallecimiento de Carmen Grau, efectuó la venta á Chavarry, recibiendo de él la suma de diez y nueve mil pesos, como pago parcial, y según documento otorgado por dicho Chavarry á favor de Pablo Morales, fechado en 22 de Enero de 1877, quedó estipulado que el primero debía retener la suma de siete mil pesos, ó sea el saldo que le quedó en deber al segundo, hasta que un entredicho que pesaba sobre dichos bienes raíces estuviera pagado y cancelado; y que entonces, dicho Chavarry "*satisfaría á los herederos y sucesores de Carmen Grau*", la expresada suma de siete mil pesos.

También consta—y esto no se ha negado—que dicho Morales, ó sea el albacea, del dinero que recibió de Chavarry, aplicó debidamente las respectivas sumas pertenecientes á la sucesión de Carmen Grau, al pago de entredichos, hipotecas y censos que, contraidos con anterioridad, pesaban sobre dicha casa.

Consta también que cuando la Audiencia Territorial expidió un decreto, dictó sentencia declarando que había caducado el entredicho y ordenando la cancelación del mismo en los Registros públicos, Chavarry pagó á Morales ó sea al albacea, la citada suma de siete mil pesos, expidiéndose por este último á favor del primero, un recibo ó carta de pago

the latter, until an injunction encumbering said real estate had been satisfied and dissolved, and that then the said Chavarry would *"pay the heirs and successors of Carmen Grau" the aforesaid sum of seven thousand pesos.* It also appears, and this has not been denied, that said Morales, the executor, out of the money he had received from Chavarry, duly applied the respective sums appertaining to the estate of Carmen Grau, to satisfying injunctions, mortgages and annuities (censos) which, having been contracted previously, encumbered said house. It also appears that when the "Audiencia Territorial" issued a decree and delivered judgment declaring that the injunction had become extinct and ordering the cancellation thereof in the public records, Chavarry paid executor Morales the aforesaid sum of seven thousand *pesos,* the former receiving from the latter an acquittance for the full amount thereof, and a month afterwards executor Morales effected the cancellation of aforesaid injunction in the Registry. On October 6, 1900, the heirs of said Carmen Grau brought this action in the District Court of San Juan against the heirs of Chavarry who at present possess the house No. 15, Cruz Street, to recover from them the aforesaid sum of seven thousand *pesos* and interest accrued thereon. The District Court of San Juan declared that said sum was due and should be paid, and rendered judgment to that effect. The majority of this Court has affirmed said opinion and judgment. I cannot concur in this decision. It is true that the will of Carmen Grau directs *that the amount of the sale of the property be apportioned among the heirs and legatees of the testatrix,* but it seems to me that by this clause she merely determines or indicates who are to receive the money, forbidding by said clause any other application of said funds. She authorized Morales to make and execute the deed of sale of said property. And it is natural to infer that the person who executed the deed should also have authorization to receive the proceeds of the conveyance. Said person could not

por el total de dicha suma, y un mes más tarde, dicho Mo-rales, el albaceá, efectuó la cancelación del citado entredicho en el Registro.

El día 6 de Octubre de 1900, los herederos de dicha Carmen Grau entablaron esta demanda ante el Tribunal de Distrito de San Juan contra los herederos de Chavarry, los cuales, en la actualidad, poseen la finca número 15, calle de la Cruz, para recobrar de ellos la citada suma de siete mil pesos y los intereses. El Tribunal de Distrito de San Juan declaró que dicha suma era debida y debía pagarse, dictando sentencia en tal sentido. La mayoría de este Tribunal confirmó dicha decisión y sentencia. Yo no puedo estar de acuerdo con esta decisión. Verdad es que el testamento de Carmen Grau dispone "*que el importe de la venta de los bienes debía repartirse entre los herederos y legatarios de la testadora*"; pero á mi me parece que por esta cláusula ella meramente determinó é indicó quiénes habían de percibir el dinero, prohibiendo, mediante dicha cláusula, cualquier otra aplicación de dichos fondos.

Ella autorizó á Morales para hacer y otorgar la escritura de venta de dichos bienes. Y es deducción natural que la persona que otorgó la escritura debía también tener autorización para recibir el producto del traspaso. Dicha persona no podía otorgar la escritura sin recibir el importe de la misma. Esta inteligencia era, al parecer, la de los herederos de Carmen Grau, porque ellos no pusieron ninguna objeción cuando Morales recibió la parte perteneciente á Carmen Grau, pagando los primeros créditos.

Y hago esta afirmación con perfecto conocimiento del hecho de que, según las leyes vigentes en Puerto Rico, y que se remontan hasta las "Partidas", los poderes de un albacea estaban extrictamente definidos, y que no podía excederse de los límites de su autorización. Y el hecho de que los herederos ratificaron los actos del Albacea, permitiéndole pagar los primeros créditos que pesaban sobre los bienes, es para mí prueba concluyente de que interpretaron dicho convenio

execute the deed without receiving the amount or cost thereof. It was so understood, it would seem, by the heirs of Carmen Grau, because they offered no objection when Morales received the portion belonging to Carmen Grau, and paid the first credits. And I make this affirmation with a perfect knowledge of the fact that under the laws in force in Porto Rico, which go as far back as the "Partidas", the powers of an executor were strictly defined and could not exceed the limits of their authorization. And the fact that the heirs ratified the acts of the executor, permitting him to satisfy the first credits that encumbered the property is to my mind conclusive evidence that they interpreted said agreement as giving Morales the right to receive the money. The clause in the document executed by Chavarry in favor of Morales wherein he declares *"that he will pay the heirs and successors of Carmen Grau the sum of seven thousand pesos"*, is merely a repetition of the clause contained in the will, namely, *"that the money was to be paid to the respective heirs and legatees designated therein, and it should not be applied to any other purposes"*, or paid to other persons, the opinion being also admitted, it would seem, that if Morales had power to execute the deed of cancellation of the injunction, he also had the right to receive the money. The defendants plead the law of prescription after twenty years. The question arises as to whether the period for instituting the action should be reckoned from the time when the "Audiencia Territorial" decreed the dissolution of the injunction, or from that in which the latter was recorded at the Registry. Should the former prevail, the action is extinguished by prescription, if the latter, then the action was instituted some two months before the expiration of the twenty years. It may, therefore, readily be observed that this controversy and surrounding circumstances are involved in doubt. In cases of this kind, where plaintiffs allow years and years to pass without alleging any right, when generations which had the primary right, if there

en el sentido de que Morales, el Albacea, tenía el derecho de recibir el dinero.

La cláusula en el documento otorgado por Chavarry á favor de Morales, en que declara *"que él pagará á los herederos y sucesores de Carmen Grau, la suma de siete mil pesos"* es solamente una repetición de la cláusula contenida en el testamento, á saber *"que el dinero había de pagarse á los respectivos herederos y legatarios designados en la misma, y que no debía aplicarse á fines distintos"*, ó pagarse á otras personas, aceptándose, al parecer, también, la opinión de que si Morales tenía el poder de otorgar la cancelación del entredicho, también tenía el derecho de recibir el dinero.

Los demandados invocan la ley de prescripción de veinte años. Surge la cuestión de si el término para establecer la demanda ha de contarse desde la época en que la Audiencia Territorial decretó la cancelación del entredicho, ó desde aquélla en que éste se inscribió en el Registro. De prevalecer lo primero, la demanda está destruida por la prescripción, y en el segundo caso, se entabló la demanda unos dos meses antes de expirar los veinte años. Se podrá, por lo tanto, fácilmente observar que este litigio y sus condiciones están envueltos y rodeados de dudas.

En casos de tal índole, en que los demandantes dejan pasar años tras años sin alegar derecho alguno; cuando generaciones que tenían el primer derecho, si es que existió derecho alguno, han fallecido; cuando otros á quienes se hubiese podido hacer responsables han dejado esta vida, cuando el albacea ha muerto, ahora después de haber transcurrido un período de más de veinte años, desde los hechos primordiales, resucita una reclamación, una fuerte duda debe naturalmente surgir en el ánimo del Tribunal, en cuanto al fundamento de la reclamación, produciendo là presunción de pago. Y esa duda debiera decidirse á favor de los herederos, supuestos deudores, á menos que los demandantes puedan disipar aquella incertidumbre, y establecer sus derechos claramente y fuera de toda discu-

was any right, have disappeared; when other persons who could have been held responsible have abandoned this life; when the executor is dead; when after a lapse of more than twenty years since the original acts took place, a claim is revived, a strong doubt should naturally arise in the mind of the Court as to the ground for the demand, leading to a presumption of payment. And this doubt should be decided in favor of the heirs, the supposed debtors, unless the plaintiffs are able to dispel that uncertainty, and establish their rights, clearly and beyond all discussion. They base their claim wholly upon deductions and the most rigid interpretation of the law. Article 658 of the Law of Civil Procedure reads as follows:

"Judges and Courts shall weigh the force of the declarations of witnesses according to rules of sound judgment, taking into consideration the reasons upon which they are based and the circumstances connected therewith".

The witnesses are here, the documents of evidence are in view, and the Court, after such a long period of time, should apply, for the purpose of weighing them the rules of sound judgment. By these principles it should have been declared that Morales, pursuant to the will of Carmen Grau, had real, if not implicit, authorization to receive the money, with the condition of delivering it to the heirs and legatees, according to the instructions contained in said will. It also should have been taken into consideration that the condition contained in the document executed by Chavarry in favor of Morales, to pay the seven thousand *pesos* to the "heirs and successors of Carmen Grau", was only a repetition of the provisions of the will, and that, therefore, he had a right, and it was his duty, to receive the money. Taking into consideration the period of time elapsed; the death of all the parties who had intervened in the transactions; that the claim was not put forward, nor any right alleged, during the life of any of them, and that no action has ever been brought against the executor or his

sión. Ellos se apoyan enteramente en deducciones y en la más estricta interpretación de la ley.    El artículo 658 de la Ley de Enjuiciamiento Civil, dice lo que sigue :

"Los Jueces y Tribunales deben apreciar la fuerza de las declaraciones de los testigos, según las reglas de la sana crítica, tomando en consideración las razones en que se fundan y las circunstancias que se relacionan con las mismas ".

Los testigos son ahora los documentos de prueba que están á la vista y el Tribunal, después de un período de tiempo tan largo, debiera aplicar, para apreciarlos, las reglas de sana crítica.    Por estos principios debiera haberse declarado, que Morales, por la autorización del testamento de Carmen Grau, tuvo verdadera, ó si no, implícita autorización para recibir el dinero, con la condición de entregarlo á los herederos y legatarios, según lo dispuesto en dicho testamento.

También debiera haberse tomado en consideración que la condición contenida en el documento otorgado por Chavarry á favor de Morales, de pagar los siete mil pesos á los "herederos y sucesores de Carmen Grau" era solamente una repetición de las disposiciones del testamento, y que, por lo tanto, tenía el derecho, y era de su deber, recibir el dinero.

Tomando en consideración el período de tiempo transcurrido; el fallecimiento de todas las partes que intervinieron en las operaciones ; que no se hizo la reclamación, ni se alegó derecho alguno durante la vida de ninguno de ellos, y que jamás se ha entablado demanda alguna contra el Albacea, ni sus herederos, procede no solamente declarar que los actos del Albacea Morales estaban autorizados por los diferentes documentos, sinó también la fuerte presunción de que pagó dicha suma á los herederos de Carmen Grau, según lo dispuesto en el testamento.    Por estas razones, soy de opinión de que ha debido anularse la sentencia del Tribunal de Distrito, y ordenarse y declararse sin lugar la demanda.